SHIVERS, Judge.
The employer/servicing agent (E/ SA) appeal from an order of the Judge of Compensation Claims (JCC) in favor of the employee/claimant. Claimant was employed by Expieare Nursing Services (Expi-care) as a staff relief nurse at the time of her injury on June 22,1989. Like the other nurses at Expieare, claimant was free to accept or refuse any temporary nursing assignment. As she was not required to work a regular schedule, neither was she guaranteed any particular number of hours. Her hourly wage was established, however, at $16.50 during the week and $18.50 on weekends. We find that competent substantial evidence supports the JCC’s finding that a compensable accident occurred when claimant, with the help of assistants, attempted to move an unusually obese, comatose patient at Bethesda Hospital, and we affirm as to that issue. The E/SA failed to meet their burden of demonstrating a more logical cause than the June 22, 1989 accident. See Ralosky v. Dynamic Builders, Inc., 500 So.2d 193 (Fla. 1st DCA 1986); Daytona Linen Service v. Davis, 454 So.2d 46 (Fla. 1st DCA 1984).
Likewise, we affirm on the issue of proper notice. Although claimant did not follow the literal requirement of § 440.-185(1), Florida Statutes (1988 Supp.), governing notice to Expieare, her employer, competent substantial evidence was presented to show that claimant met her burden of proof as to notice. See Camer *128 on v. City of Miami Beach, 152 So.2d 163 (Fla.1963). Her unrefuted testimony showed that Expicare’s formal procedures for reporting work-related accidents had not been fully implemented, nor had they been explained to her, at the time of injury. The supervisors at Expicare and the Bethesda Hospital staff each mistakenly believed that the other had oriented claimant and the other temporary licensed practical nurses (LPN’s) concerning proper reporting procedures.
Additionally, the evidence supports the JCC’s conclusion that claimant acted reasonably and did what she thought she was supposed to do, under the circumstances, by immediately informing her hospital supervisor, Fely Franco, about the injury, and about one month later, after realizing that the seriousness of her injury required further medical treatment and hospitalization, by contacting Karen Kelly, the president of Expicare. See Peters v. Armellini Express Lines, 527 So.2d 266 (Fla. 1st DCA 1988); Riddle v. Brevard County Board of Public Instruction, 286 So.2d 557 (Fla.1973) (failure to give proper notice excusable if claimant prosecuted claim with acceptable degree of diligence). Alternatively, we note that the actual payment of compensation or the providing of medical care, which occurred here, can constitute a waiver of an employer’s right to receive timely notice of an employee’s injury. See Logan v. Boise Cascade Corp., 5 Or.App. 636, 485 P.2d 441 (1971); 2B Larson, Workmen’s Compensation Law, § 78.31(d), pp. 15-164 & 15-165 (1989).
As to the final issue, we find an abuse of discretion in the JCC’s determination of how claimant’s average weekly wage (AWW) was to be determined pursuant to § 440.14. The JCC relied on claimant’s 13-week wage statement and correctly determined that she had not worked “substantially the whole of 13 weeks immediately preceding the injury” as that period is defined in § 440.14(l)(a). Once the JCC determined that subsection (1)(a) was not satisfied, the statute required a determination of whether there was “a similar employee in the same employment who ha[d] worked substantially the whole of such 13 weeks,” upon whose wages claimant’s AWW could be based. See § 440.14(1)(b).
Based on the exhibits and the testimony of Debra Morley, Expicare’s administrative vice-president, the JCC found that Judith Bridger and Peggy Gillespie-Privett were “similar employees” for purposes of the statute and that § 440.14(1)(b) was the proper approach to calculate claimant’s correct AWW. It was proper to consider other Bethesda Hospital staffers who did the same type of work in the same capacity as claimant. See Coleman v. Burnup & Sims, Inc., 95 So.2d 895, 897 (Fla.1957). Given the circumstances of employment for the Expicare LPN’s, it is noteworthy that the reference in subsection (1)(b) to “substantially the whole” of the 13 preceding weeks means “not less than 90 percent of the total customary full-time hours of employment,” as shown in a reading of § 440.-14(1)(a). There was no relevant evidence to indicate that there were “customary full-time hours of employment” for Expicare’s LPN’s like claimant. In fact, the essence of their agreement with Expicare was that they could work as many or as few hours or days as they wished, or none at all. They were under no obligation to accept an unwanted assignment. Claimant relies on the testimony of Expicare’s officer Morley that the company designated as “full-time” those employees who averaged at least 32 hours of work per week. However, a careful reading of Morley’s testimony persuades us that that particular calculation as to “full-time” employees was made for purposes of determining entitlement to medical insurance, not for purposes of the statutory provisions for determining wages at issue here. For that reason, we find that the 32-hour figure is not dispositive of the instant question. Additionally, Morley testified that her documentation and her own recollection indicated that claimant was not entitled to insurance because she did not average 32 hours per week. While evidence of payment of the same hourly wage often is a strong indication that employees are “similar,” see AMF Powerboat Division v. Gilchrist, 409 So.2d 159 (Fla. *129 1st DCA 1982), the instant facts demonstrate an exception to that rule because the terms of employment permitted such a wide range in numbers of hours worked during any particular day or week.
The JCC did not explain the reason for choosing Bridger and Gillespie-Privett as “similar employees” or for not choosing any of the other LPN’s. That lack of explanation is a matter of concern because their gross amounts earned during the 13 weeks are considerably larger than those of any other LPN whose wages are included in the record on appeal. The E/SA argue that those higher wage figures represent no greater variance from claimant’s earnings than the lower wage-earners’ figures would. That argument ignores the fact that the working arrangements at Ex-picare resulted in the LPN’s being “dissimilar” so long as they remained completely flexible to choose a particular work schedule. It is claimant’s burden to establish AWW. Western Auto v. Moore, 567 So.2d 972 (Fla. 1st DCA 1990). We find that the JCC’s reliance on the “similar employee” method of calculating claimant’s AWW is not supported by competent substantial evidence.
Under those circumstances, it is necessary for the JCC to apply § 440.14(l)(d), the fall-back provision where none of the prior subsections apply. The order of the JCC is affirmed as to the findings that a work-related accident occurred on June 22, 1989, and that claimant acted reasonably under the circumstances in providing notice of her injuries. However, we reverse and remand as to the issue of calculating claimant’s AWW, and direct the JCC to use the formula provided in § 440.14(l)(d), F.S. (1988 Supp.).
AFFIRMED in part and REVERSED and REMANDED in part.
WIGGINTON and BARFIELD, JJ., concur.